UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

B.B.,

                              Plaintiff,

              -against-

THE NEW SCHOOL,

                              Defendant.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED:  4/30/2018  _____        │
└─────────────────────────────────────┘
```

17 Civ. 8347 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

Plaintiff, a male student who is proceeding under the initials B.B., brings this action against Defendant, The New School, alleging breach of contract, an Article 78 claim, and a violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.* The crux of Plaintiff's claim is that when The New School adjudicated accusations of sexual assault against him, found him responsible for sexual misconduct, and suspended him for one year, it discriminated against Plaintiff because of his gender. The New School moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) and to stay discovery pending resolution of the motion to dismiss. For the reasons below, The New School's motions to dismiss is GRANTED and its motion to stay discovery is DENIED as moot.

### BACKGROUND

The facts below, taken from the complaint, exhibits attached thereto, and documents relied upon in drafting the complaint, are assumed to be true for the purpose of resolving the motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

I.      The New School's Code of Conduct and Disciplinary Procedures

In 2005, The New School adopted disciplinary procedures for "incidents involving violations of the University policies governing student conduct . . . including the Sexual

Misconduct & Violence Policy."[1]  School Policies at 8, ECF No. 12-1.[2]  A copy of these
procedures, as well as the school's Code of Conduct and Title IX policies, were provided to
Plaintiff at the time of his enrollment.  Compl. ¶ 5.  The Office of Student Conduct and
Community Standards ("SCCS") administers these procedures.  School Policies at 8.

      The disciplinary process for violation of The New School rules begins with a complaint,
which may be filed by any member of the school community to SCCS.  *Id.* at 14.  After, SCCS
will "conduct a preliminary review of the complaint" by questioning relevant persons, including
the person accused of misconduct.  *Id.*  Next, if SCCS determines there is a sufficient basis to
support the complaint, the accused will be notified in writing.  *Id.* at 15.  But if SCCS determines
there is an insufficient basis, it will dismiss the complaint.  *Id.*

      After SCCS gives an accused student notice of the complaint, SCCS may hold one-on-
one meetings with the parties in order to further investigate the incident.  *See id.* at 14–15.  At
that point, if the violation could result in suspension or expulsion, SCCS will refer the matter to
The New School's Vice President for Student Success, who may further refer the matter to a
Disciplinary Review Panel.  *Id.* at 15.

      The Disciplinary Review Panel "consist[s] of five members of the university
community," and it is tasked with deciding whether the accused is responsible for the alleged
violations as well as appropriate sanctions.  *Id.* at 16.  Its findings are made using the
preponderance of evidence standard.  *Id.* at 8.  Possible sanctions include verbal warning,
disciplinary probation, suspension, or expulsion.  *Id.* at 11.  SCCS will notify the accused party
of the date, time, and location of the hearing before the Disciplinary Review Panel.  *Id.* at 15.  At

---

[1] The procedures were adopted in April 26, 2005, but, as relevant here, were revised in September 1,
2016.  School Policies at 1.

[2] Page numbers refer to the digital pagination in the PDF.

the hearing, students may bring a support person, who "may not participate or intervene in the review process." *Id.* at 16. The decisions of the Disciplinary Review Panel will be forwarded to the Assistant Vice President for Student Equity and Access, who will review and communicate them to the accused student. *Id.* Students accused of sexual misconduct are entitled to appeal the decision of the Disciplinary Review Panel. *Id.* at 9, 16.

The New School's "Sexual Misconduct & Violence Policy" prohibits "sexual misconduct" which is defined as "any non-consensual sexual contact that is . . . intentional sexual touching." Compl. ¶ 22.[3] It also prohibits "sexual exploitation," defined as "when one person takes non-consensual or abusive sexual advantage of another for his/her own advantage or benefit," *id.* ¶ 23, and "domestic violence," defined as "violent misdemeanor and felony offenses committed by the victim's current or former spouse, current or former co-habitant, person similarly situated under domestic or family violence law, or anyone else protected under domestic or family violence law," *id.* ¶ 24.

The New School's Code of Conduct also prohibits various other forms of misbehavior, including, as relevant here: (i) "General Misconduct," which "is conduct unbecoming of student member of the university community," Compl. ¶ 26; School Policies at 3; (ii) "Disorderly Conduct," which "includes, but is not limited to, lewd, indecent, or obscene behavior . . . or conduct which adversely affects the student's suitability as a member of the university community," Compl. ¶ 27; School Policies at 3; (iii) "Harassing Conduct," which "includes, but is not limited to, verbal or written actions that are abusive to any person," Compl. ¶ 28; School

---

[3] Although the complaint quotes from and relies upon The New School's Sexual Misconduct & Violence Policy, it does not attach it to the complaint. A full version is available at "Sexual Misconduct & Violence Policy," The New School, https://www.newschool.edu/student-conduct/sexual-misconduct-policy (last visited April 23, 2018). It defines "sexual assault" as "non-consensual sexual intercourse" involving penetration.

Policies at 3; (iv) "Physical Harassment," which "includes, but is not limited to inappropriate touching of any person;" Compl. ¶ 29; School Policies at 3; (v) "Bullying," which is "behavior that is repetitive, pervasive, and egregious and intended to intimidate, harass, frighten, abuse, insult, threaten, or otherwise harm an individual psychologically or physically," Compl. ¶ 30; School Policies at 5; and (vi) "Physical Assault or Physical Violence," defined as "[i]ntentionally inflicting bodily harm upon any person; taking reckless action that results in harm to any person; or threatening by any means of transmission the use of force to harm or injure any person," Compl. ¶ 34; School Policies at 6.

Discipline is not limited to on-campus misbehavior. Rather, "off-campus" conduct may expose students to disciplinary action "when such conduct is likely to have an adverse influence on the university, on the educational process, or affects the student's suitability as a member of the academic community." School Policies at 2.

II.     The Underlying Incident and Adjudication

In the fall of 2016, Plaintiff enrolled in a Masters of Fine Arts, Creative Writing program at The New School, a non-profit institution of higher education located in New York City. Compl. ¶ 4, ECF No. 12. Around the same time, Plaintiff began a consensual sexual relationship with a woman who was a student in one of his classes ("Claimant"). Compl. ¶ 7; Appeal Ltr. at 1, ECF No. 12-3. Plaintiff brought the relationship to an end on February 17, 2017. Compl. ¶ 7.

In April 2017, The New School notified Plaintiff that Claimant had reported an incident involving potential sexual assault to SCCS and the Title IX Coordinator, Jennifer Francone. *Id.* ¶ 9. At a meeting held on April 26, 2017, Francone questioned Plaintiff about his relationship with Claimant. *Id.* ¶ 10.

By letter dated May 11, 2017 (the "May 11 Letter"), Gene Puno-DeLeon, The New School's Director of Student Conduct and Community Standards, summarized Plaintiff's April 26, 2017 meeting with the Title IX coordinator and informed Plaintiff that the school was referring the matter to a Disciplinary Review Panel to determine whether Plaintiff violated "the university's Student Code of Conduct and the Sexual Misconduct and Violence Policy."  Compl. ¶ 11; May 11 Ltr. at 1, ECF No. 24-3.[4]

The May 11 Letter recounted Claimant's allegations against Plaintiff.  For example, during their relationship, Plaintiff would choke, slap, kick, and scratch Claimant as well as throw objects at her during sex without her consent, while making demeaning and threatening comments.  May 11 Ltr. at 1 (alleging that Plaintiff said "Do you like knowing I could kill you?").  On one occasion, the letter stated, Plaintiff slapped Claimant "across the face without her consent," that the slap was "harder than [Plaintiff] had [hit] her before and she started to cry," and that the following day, "there was a swollen spot on her cheek, it was tender, and some small blood vessels had broken."  *Id.*  During another sexual encounter, Plaintiff threw Claimant against a window, "[s]he hit her head and became dazed," Plaintiff did not notice, and then he "penetrated her without her consent."  *Id.*  The incidents escalated, the letter states, on February 5 or 6, 2017.  Claimant reported that during sex, Plaintiff "urinated on her face" without

---

[4] The New School attached this letter to its motion to dismiss.  Although material outside the complaint is typically not considered on a 12(b)(6) motion, the Court may consider it here because the letter is quoted in the complaint, and because Plaintiff has relied upon the letter in framing the complaint.  *See* Compl. ¶ 11; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (holding that a document may be considered on a motion to dismiss where the complaint "relies heavily upon [the document's] terms and effect, which renders the document 'integral' to the complaint" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

permission.  *Id.* at 2.  Plaintiff denied making threatening comments and choking or urinating on

Claimant, and he stated that Claimant once asked him to slap her across the face during sex.  *Id.*

After summarizing these allegations, the letter scheduled a disciplinary hearing for May

16, 2017 and allowed Plaintiff to bring a support person to the hearing.  *Id.*  At the hearing,

Plaintiff was accompanied by counsel who was not permitted to speak.  Compl. ¶ 12.  Prior to

Plaintiff's arrival, the Disciplinary Review Panel heard statements from Claimant and another

male student who testified in favor of Claimant (the "Witness").  *Id.*

The following day, on May 17, 2017, the Disciplinary Review Panel issued its finding

that, by a preponderance of the evidence, Plaintiff had violated The New School's Sexual

Misconduct and Violence Policy for Non-consensual Sexual Contact, Sexual Exploitation, and

Domestic Violence and the Student Code of Conduct Sections II.A.1 (General Misconduct),

II.A.2 (Disorderly Conduct), II.A.3 (Harassing Conduct), II.A.4 (Physical Harassment), II.A.33

(Bullying), and II.A.34 (Physical Assault).  *Id.* ¶¶ 11, 13; Decision Ltr. at 1, ECF No. 12-2.

However, the Disciplinary Review Panel found Plaintiff not responsible for Sexual Assault.  *Id.*

¶ 13; Decision Ltr. at 1.

The Disciplinary Review Panel explained that it reviewed documents submitted by

Plaintiff, Claimant, and the Witness, and that in reaching its decision, it found Claimant "to be a

more credible witness."  Decision Ltr. at 1.  The assessment of credibility was "bolstered" by the

testimony of the Witness who observed Plaintiff's "interactions with [Claimant] and other female

students."  *Id.*  Claimant "was clearly distressed by her experience," the Disciplinary Review

Panel wrote, and Plaintiff was "lacking in empathy and therefore [was] not credible."  *Id.*  As

punishment, Plaintiff received a one-year suspension, and should he return to The New School,

disciplinary probation for the remainder of his studies.  *Id.* at 2.

III.   <u>Appeal</u>

By letter dated June 1, 2017, Plaintiff appealed the decision of the Disciplinary Review Panel.  Compl. ¶ 14; Appeal Ltr. at 1.  The New School denied Plaintiff's appeal on June 14, 2017.  Compl. ¶ 15; Appeal Denial Ltr., ECF No. 12-4.  In his appeal letter, Plaintiff first argued that The New School lacked jurisdiction over him because his relationship with Claimant occurred off campus.  Appeal Ltr. at 1.  The New School responded that the school's disciplinary procedures extend to off-campus activity so long as a student's conduct "is likely to have an adverse effect on the university, on the educational process, or affects the student's suitability as a member of the academic community," which it found Plaintiff's conduct did.  Appeal Denial Ltr. at 3.  Next, Plaintiff argued on appeal that the evidence did not support the The New School's finding, and that it was irrational for the Disciplinary Review Panel to conclude that Claimant was more credible because she "appeared distressed."  *Id.* at 1–2.  The New School responded that the Disciplinary Review Panel receives training on credibility assessments, the preponderance of evidence standard, and reviewing evidence, and that Plaintiff's disagreement with credibility determinations did not provide a reason to "revisit the panel's consideration[s]."  Appeal Denial Ltr. at 2.

Plaintiff also argued on appeal that procedural defects of the process deprived him of a fair adjudication.  For example, Plaintiff noted that he was unable to cross-examine Claimant or the Witness, that he did not have the opportunity to review written witness statements, and that he did not have the opportunity to present a witness.  Appeal Ltr. at 2.  The New School replied that the Disciplinary Review Panel does not permit cross-examination by either party, that Plaintiff reviewed the case file (including the witness statement) in person on May 15, 2017, and

that Plaintiff received two extensions to gather supporting evidence and potential witnesses. Appeal Denial Ltr. at 1.

IV.   <u>Procedural History</u>

Four months after The New School denied his appeal, Plaintiff filed an Article 78 proceeding in Supreme Court, New York County.  ECF No. 1-3.  The state action included a claim under Title IX, a cause of action for breach of contract, and an Article 78 claim.  *Id.*  The New School removed the case to federal court on October 30, 2017.  Notice of Removal, ECF No. 1.  On November 29, 2017, Plaintiff filed an amended complaint.  Compl.  On January 26, 2018, The New School filed a motion to dismiss to the complaint, ECF No. 24, and the motion was fully submitted on February 16, 2018, Def. Reply, ECF No. 27.

**DISCUSSION**

I.   <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing suit.  *See Chambers*, 282 F.3d at 153.  The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant.  *See ATSI Commc'ns*, 493 F.3d at 98.

II.    <u>Analysis</u>

A.    Title IX

Title IX prohibits educational institutions receiving federal funds from discriminating on the basis of gender.  20 U.S.C. § 1681(a)(1).  Congress enacted Title IX "to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities."  *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016).  As a result, "courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).  Unlike Title VII, however, Title IX claims may not be predicated on a "disparate impact" theory.  *See Alexander v. Sandoval,* 532 U.S. 275, 280 (2001) (noting that Title VI "prohibits only intentional discrimination" and that Title IX "was patterned after Title VI" (internal quotation marks omitted)).

Claims that challenge university disciplinary proceedings under Title IX generally fall within two categories: "erroneous outcome" or "selective enforcement" claims.  *Yusuf*, 35 F.3d at 715.  In the first category, "erroneous outcome," "the claim is that the plaintiff was innocent and wrongly found to have committed an offense."  *Id.*  In the second, "selective enforcement," the "claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender."  *Id.*

Regardless of the theory, a plaintiff must plead that "the complained-of conduct was discriminatory."  *Id.*  Recently in *Doe v. Columbia University*, the Second Circuit clarified the pleading standard for gender discrimination under Title IX, announcing that Title VII's *McDonnell Douglas* framework would extend to Title IX.  831 F.3d at 56.  Under *McDonnell Douglas*, a Plaintiff enjoys a "temporary presumption [that] reduces the plaintiff's pleading burden, so that the alleged facts need support only a minimal inference of bias."  *Id.*  Therefore, a

Title IX plaintiff need only "plead[] specific facts that support a minimal plausible inference" of gender bias.  *Id.*

"[S]tatements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender" may suffice to show gender bias.  *Yusuf*, 35 F.3d at 715.  However, even after *Columbia University*, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss."  *Id.*

Although the complaint does not designate which type of claim Plaintiff brings, in a letter to the Court he explains that he is pursuing an erroneous outcome claim.  Status Ltr. at 2, ECF No. 20.  To state an erroneous outcome claim, a plaintiff must allege (1) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding"; and (2) "a causal connection between the flawed outcome and gender bias."  *Yusuf*, 35 F.3d at 715.

The New School moves to dismiss the claim on the ground that the complaint does not satisfy either element of the claim.  Def. Mem. at 10–13, ECF No. 24-1.  The Court agrees, concluding that Plaintiff's allegations do not move his erroneous outcome claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and do not support "a minimal inference of bias," *Columbia Univ.*, 831 F.3d at 56.

### 1.    Particular Facts Sufficient to Cast Articulable Doubt

As to the first factor, Plaintiff fails to state "particular facts" that cast "articulable doubt" on the accuracy of The New School's disciplinary proceedings.  The panel heard testimony from Plaintiff, Claimant, and the Witness, reviewed contemporaneous evidence such as text and social

media messages, and concluded—based on the respective credibility of Claimant and Plaintiff—that Plaintiff was more likely than not responsible for sexual misconduct, among other violations.  *See* Decision Ltr. at 1; Appeal Denial Ltr. at 1–2.

Although Plaintiff does include some allegations that arguably cast doubt on the fairness or accuracy of the disciplinary process, they are rebutted by the exhibits Plaintiff has attached or quoted in his complaint.  For example, the complaint alleges that "[n]ot a single instance of misconduct was identified prior to Plaintiff's hearing."  Compl. ¶ 20; *accord* Pl. Opp. at 5, ECF No. 26.  This allegation is demonstrably contradicted, however.  The May 11 Letter from The New School to Plaintiff—which is quoted in the complaint—discusses at length the allegations against him and the possible violations of school policy.  May 11 Ltr.  In addition, despite Plaintiff's allegation that he did not have the opportunity to present a witness or review the evidence against him, The New School's letter denying his appeal—which Plaintiff attaches to his complaint—makes clear that Plaintiff reviewed the case file (including the witness statements) in person on May 15, 2017, and that Plaintiff received multiple extensions to build his case, but he never suggested a witness.  *See* Appeal Denial Ltr. at 1.

Although the Court should draw reasonable inferences in favor of Plaintiff, it "is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint."  *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10 Civ. 1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).  Here, Plaintiff offers no explanation in his complaint or opposition brief that reconciles the conflict between his allegations and the exhibits.  Nor does Plaintiff cast doubt on the authenticity or veracity of these documents.  Accordingly, because those contradicted allegations are implausible, they will not

defeat a motion to dismiss.  *Matusovsky v. Merrill Lynch,* 186 F. Supp. 2d 397, 399–400

(S.D.N.Y. 2002) ("[C]ontradicted . . . allegations are insufficient to defeat a motion to dismiss.").

Other than the contradicted allegations, the allegation that comes closest to stating a

claim is one involving exculpatory evidence Plaintiff submitted to the Disciplinary Review

Panel: "the entirety of the text message and Facebook message conversations between Plaintiff

and the [Claimant]," which "reveal a consenting sexual relationship between two adults that did

not violate any rules or regulations of The New School."  Compl. ¶ 18.  Such allegation fails,

however, to allege *particular* facts that cast some articulable doubt on the proceedings.  Plaintiff

does not elaborate what specifically in these messages rebuts the allegations that Plaintiff would

threaten, choke, slap, kick, scratch, and urinate on Claimant without her consent.  Plaintiff's

blanket characterization that the messages show a relationship "that did not violate any rules or

regulations of The New School"—an allegation akin to a "legal conclusion[]"—is one the Court

must disregard.  Compl. ¶ 18; *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 555); *see

also Trujillo v. City of New York*, No. 14 Civ. 8501, 2016 WL 10703308, at *14 (S.D.N.Y. Mar.

29, 2016) (disregarding as too conclusory allegation that a defendant "made his dislike of and

racist/discriminatory attitudes/beliefs against Hispanics/Latinos clear to [p]laintiff," where

complaint did not contain allegations that elaborated upon what was actually said), *aff'd* 696 F.

App'x 560, 561 (2d Cir. 2017) (summ. order).

Where courts find erroneous outcome claims cognizable, the complaints include

particular facts of evidentiary weaknesses or significant unfair, lopsided procedures.  In *Prasad

v. Cornell University*, for example, the complaint alleged "a host of facts demonstrating

particular evidentiary weaknesses," such as the fact that Cornell University relied on an

"unverified on-line Blood Alcohol Content [] calculation tool" to conclude that plaintiff's

accuser "was intoxicated to the point of being mentally incapacitated and incapable of consent to engage in such sexual activity"—notwithstanding four witness statements which stated that the accuser "was not exhibiting visible signs of intoxication during the time leading up to the intimate encounter with [plaintiff]."  No. 15 Civ. 322, 2016 WL 3212079, at *6, *9, *15–17, n.30 (N.D.N.Y. Feb. 24, 2016).  The *Prasad* complaint also alleged examples of unfair and lopsided treatment of plaintiff in the hearing: extensions were routinely granted to the accuser, but denied to plaintiff, and the accuser was permitted an opportunity to review and respond to plaintiff's appeal, but plaintiff denied the same.  *Id.* at *7.  In *Rolph v. Hobart & William Smith Colleges*, similarly, the plaintiff alleged that the school's investigator "failed to review or preserve electronic evidence or conduct any follow-up interviews to resolve inconsistencies between witnesses' statements" and the school "helped [the accuser] prepare her case" but did not assist the plaintiff.  271 F. Supp. 3d 386 (W.D.N.Y. 2017).

Accordingly, the Court cannot conclude that there are "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding."  *Yusuf*, 35 F.3d at 715.

### 2.    Gender Bias

Even if Plaintiff were to successfully plead the first element, he cannot satisfy the second—the connection between the outcome and gender bias.  Because the complaint fails to "plead[] specific facts that support a minimal plausible inference" of gender bias, this claim "stops short of the line between possibility and plausibility."  *Columbia Univ.*, 831 F.3d at 56; *Iqbal*, 556 U.S. at 678.

Plaintiff's primary argument in favor of gender bias is that the Disciplinary Review Panel found Claimant "distressed by her experience" and Plaintiff "lacking in empathy and therefore []

not credible."  Compl. ¶ 60.  Such a statement, Plaintiff contends, reflects stereotypical gender roles and thus suggests gender bias.  Pl. Opp. at 10–11.  The Court disagrees.  The statement about Plaintiff's lack of empathy is gender neutral.  That is not to deny that "statements by members of the disciplinary tribunal" could suggest gender bias, *Yusuf*, 35 F.3d at 715, but to suffice as such a statement, it must have a *bona fide* connection to gender.

By way of benchmark, the landmark gender stereotyping case, *Price Waterhouse v. Hopkins*, involved supervisors describing a female employee as "overly aggressive," "macho" and "somewhat masculine," and she was advised that in order to improve her chances she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry."  490 U.S. 228, 235, 250–51 (1989) (superseded by statute on other grounds).  Measured against the sex stereotyping language in *Price Waterhouse*, the concepts of being "distressed" or showing "empathy" reflect no gender connotation.  Nor is the Court aware of any authority stating that "empathy" or "distressed" call to mind gender, and Plaintiff does not cite one.

Finally, the complaint alleges that persons accused of sexual assault at The New School are "invariably male."  Compl. ¶ 59.  As a result, Plaintiff contends, The New School's policies reflect a "gender-biased practice with respect to respondents, who are invariably male students, accused of sexual misconduct."  Pl. Opp. at 14.  The New School argues that a claim based on this allegation must fail because Title IX does not permit disparate impact claims.  Def. Mem. at 14; Def. Reply at 6.  That is, because Title IX only prohibits intentional discrimination, a claim that a school's facially neutral policies disproportionately disadvantage male students is not actionable under Title IX.

The New School is incorrect.  Although Plaintiff indeed cannot bring a Title IX disparate impact claim, evidence or allegations that a neutral policy disproportionately hurts one gender can serve as "circumstantial evidence" of intentional discrimination at the pleadings stage. *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y. 2002); *see also Yusuf*, 35 F.3d at 715 (noting that "patterns of decision-making that also tend to show the influence of gender" may suffice to show gender bias).

Still, the allegation that the accused are "invariably male" fails to support a minimal plausible inference of gender bias for reasons other than the viability of disparate impact.  Absent any factual detail of past cases involving sexual assault, and the gender composition of accusers and the accused, such allegation is too conclusory.  And even assuming that it is true, Plaintiff fails to articulate what about The New School's disciplinary policies disproportionately hurts the accused male students.  As explained above, *supra* Discussion I.A.1, the complaint is devoid of plausible allegations that the school's procedures are lopsided against the accused.  The allegation that "the accused is not put on notice of the nature of the allegations made against them [sic]," Compl. ¶ 59, is contradicted by the complaint.  School Policies at 14 ("[The New School] will notify the responding party of the complaint."); Compl. ¶ 9 (alleging that The New School notified Plaintiff in April 2017 that an incident had been reported); May 11 Ltr. 1–3 (recounting the allegations against Plaintiff in full detail).

Other than focusing on The New School's use of the words "distressed" and "empathy," and his allegation that persons accused of sexual assault are "invariably male," Plaintiff does not allege any other facts on the issue of gender bias.  There is no suggestion, for instance, that The New School faced "substantial criticism" for its handling of Title IX investigations, and that as a result, it was "motivated to favor the accusing female over the accused male." *Columbia Univ*.,

831 F.3d at 57; *see also Rolph*, 271 F. Supp. 3d at 386 (noting that allegation of public pressure against the college—that it "was criticized in the media for failing to take seriously female students' complaints of sexual assault by male students"—supported a minimal inference of gender bias).

Nor does the complaint say anything about the Title IX investigators or members of the Disciplinary Review Panel to suggest they held anti-male biases. *Doe v. Washington & Lee Univ.*, No. 14 Civ. 52, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015) (gender bias could be inferred from Title IX officer's presentation that regret after a sexual encounter "equals rape"); *cf. Doe v. Univ. of Colorado, Boulder*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017) (alleging, albeit unsuccessfully, that an all-female Title IX team reflects gender bias against accused male student). Nor is there an allegation that The New School has "displayed a pattern of anti-male gender bias." *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1073 (S.D. Ohio 2017) (noting that plaintiff enumerated 20 examples of alleged anti-male gender bias in his pleading).

Notwithstanding his minimal burden, Plaintiff has not provided the necessary factual material from which the Court can infer that The New School's disciplinary proceedings were motivated by gender bias. Accordingly, because Plaintiff cannot establish either element of the "erroneous outcome" test, the motion to dismiss this claim is GRANTED.

B.    State Law Claims

Having determined that Plaintiff's sole basis for federal jurisdiction, Title IX, should be dismissed, the Court will not exercise supplemental jurisdiction to resolve Plaintiff's remaining state law breach of contract and Article 78 claims. The Second Circuit has held time and time again that "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. U.N.*, 597 F.3d 107, 113–14 (2d Cir. 2010) (internal quotation

16

marks and citation omitted); *accord Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011)).  This is particularly so where district courts "consistently decline[] to exercise supplemental jurisdiction over Article 78 claims" because "Article 78 is not in and of itself a cause of action, but a procedure best suited for state courts." *Furk v. Orange-Ulster BOCES*, No. 15 Civ. 6594, 2016 WL 6560408, at *14–16 (S.D.N.Y. Nov. 2, 2016) (quoting *De Jesus v. City of New York*, No. 10 Civ. 9400, 2012 WL 569176, at *4 (S.D.N.Y. 2012)).  In light of this practice, and because judicial economy, convenience, fairness, or comity would not be served by adjudicating the state law claims, the Court declines to exercise supplemental jurisdiction here.

C.     Remand

"When a district court declines to exercise supplemental jurisdiction in a case removed from State court, it has discretion either to dismiss the claims without prejudice or to remand the claims." *Bhattacharya v. Suny Rockland Cmty. Coll.*, No. 17 Civ. 1048, 2017 WL 4511397, at *2 (2d Cir. Oct. 10, 2017) (summ. order) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).  Here, the Court elects to remand this case.  Because the four-month statute of limitations on Plaintiff's Article 78 claim will have expired, dismissal could foreclose Plaintiff's ability to litigate this claim—a result that would not serve fairness nor comity.  *See Carnegie-Mellon Univ.*, 484 U.S. at 351; *Romer v. Bd. of Trustees of Hobart & William Smith Colls.*, 842 F. Supp. 703, 707 (W.D.N.Y. 1994) (four-month statute of limitations in Article 78 action against college).

D.     Stay of Discovery

The New School requested a stay of discovery pending resolution of the motion to dismiss.  ECF No. 22.  Because the Court resolves the motion to dismiss in The New School's

favor, and remands this case back to state court, the stay motion is DENIED as moot. *Reese v. McGraw-Hill Cos., Inc.*, No. 08 Civ. 7202, 2012 WL 9119573, at *2 (S.D.N.Y. Mar. 30, 2012), *aff'd sub nom. Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32 (2d Cir. 2012) (summ. order).

## CONCLUSION

For the reasons above, The New School's motion to dismiss is GRANTED and its motion to stay discovery is DENIED as moot.

The Clerk of Court is directed to REMAND the case to Supreme Court, New York County.

SO ORDERED.

Dated: April 30, 2018
       New York, New York

_____
ANALISA TORRES
United States District Judge